IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CASE NO. 11-3802

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

EDMUNDO RUIZ, JR.,
Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of Ohio
Western Division

BRIEF OF PLAINTIFF-APPELLEE

Michael M. Losavio
1520 Castlewood Avenue
Louisville, Kentucky 40204
Telephone No: (502) 417-4970

Counsel for Defendant-Appellant

STEVEN M. DETTELBACH
United States Attorney

Laura McMullen Ford
Assistant United States Attorney
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
Telephone No: (216) 622-3817
Facsimile No: (216) 522-7358
Laura.Ford@usdoj.gov

Counsel for Plaintiff-Appellee

i

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT.. . . . . . . . . . . . . . . . . . . . . vi

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.    AN EXTENSIVE FACTUAL BASIS SUPPORTS RUIZ'S GUILTY
      PLEAS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

II.   RUIZ WAIVED HIS RIGHT TO CHALLENGE HIS STATUTORY
      MANDATORY MINIMUM SENTENCE TO WHICH HE AGREED
      UNDER THE AMENDED PLEA AGREEMENT.. . . . . . . . . . . . . . . . . . 29

III.  WITHOUT A SUBSTANTIAL ASSISTANCE MOTION UNDER 18
      U.S.C. § 3553(e) FROM THE GOVERNMENT, THE DISTRICT COURT
      LACKED AUTHORITY TO *SUA SPONTE* DEPART OR VARY BELOW
      THE MANDATORY MINIMUM SENTENCE TO WHICH RUIZ
      AGREED UNDER THE AMENDED PLEA AGREEMENT. . . . . . . . . . . 32

IV.   RUIZ WAIVED HIS ARGUMENTS THAT, CONTRARY TO THE
      PARTIES' AGREEMENT, THE DISTRICT COURT SHOULD HAVE
      APPLIED A THREE-LEVEL REDUCTION FOR ACCEPTANCE OF
      RESPONSIBILITY AND DECLINED TO APPLY A FOUR-LEVEL
      UPWARD ADJUSTMENT FOR ROLE, BOTH OF WHICH, EVEN IF

ii

RESOLVED IN RUIZ'S FAVOR, WOULD NOT HAVE ALTERED HIS AGREED UPON STATUTORY MANDATORY MINIMUM SENTENCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION.. . . . . . . . 42

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS. . . . . . . 44

iii

# TABLE OF AUTHORITIES

## FEDERAL CASES                                          PAGE(S)

<u>Gall v. United States</u>, 552 U.S. 38 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

<u>United States v. Aparco-Centeno</u>, 280 F.3d 1084 (6th Cir. 2002). . . . . . . . . . . . . 39

<u>United States v. Bolds</u>, 511 F.3d 568 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . 34

<u>United States v. Bradley</u>, 400 F.3d 459 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . 31

<u>United States v. Brogdon</u>, 503 F.3d 555 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . 33

<u>United States v. Burgess</u>, 142 Fed. Appx. 232, 2005 WL 1515327
(6th Cir. 2005) (unpublished). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

<u>United States v. Calderon</u>, 388 F.3d 197 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . 30

<u>United States v. Conatser</u>, 514 F.3d 508 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . 33

<u>United States v. Denkins</u>, 367 F.3d 537 (6th Cir. 2004). . . . . . . . . . . . . . . . . . 37-39

<u>United States v. Dominguez-Benitez</u>, 542 U.S. 74 (2004). . . . . . . . . . . . . . . . . . . 27

<u>United States v. Fleming</u>, 239 F.3d 761 (6th Cir. 2001). . . . . . . . . . . . . . . . . . . . . 31

<u>United States v. Jeross</u>, 521 F.3d 562 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . 32, 33

<u>United States v. Massey</u>, 663 F.3d 852 (6th Cir. 2011). . . . . . . . . . . . . . . 20, 36, 40

<u>United States v. McCreary-Redd</u>, 475 F.3d 718 (6th Cir. 2007). . . . . . . . . . . 22, 23

<u>United States v. McGhee</u>, 854 F.2d 905 (6th Cir. 1988). . . . . . . . . . . . . . . . . . . . 26

<u>United States v. McGilvery</u>, 403 F.3d 361 (6th Cir. 2005). . . . . . . . . . . . . . . . . . 31

iv

United States v. Phinazee, 515 F.3d 511 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . 34

United States v. Sexton, 512 F.3d 326 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . 33

United States v. Sheppard, 149 F.3d 458 (6th Cir. 1998). . . . . . . . . . . . . . . . 37, 38

United States v. Smith, 344 F.3d 479 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . 29

United States v. Swanberg, 370 F.3d 622 (6th Cir. 2004). . . . . . . . . . . . . . . 29, 31

United States v. Taylor, 627 F.3d 1012 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . 22

United States v. Thomas, 2011 WL 4014345 (6th Cir. 2011) (unpublished). . . . 33

United States v. Tunning, 69 F.3d 107 (6th Cir. 1995). . . . . . . . . . . . . . . . . . . . 23

United States v. Vowell, 516 F.3d 503 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . 34

United States v. Welch, 97 F.3d 142 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . 25

United States v. Wilson, 438 F.3d 672 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . 31

## **FEDERAL RULES**

Fed. R. App. P. 34(a)(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

Fed. R. Crim. P. 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20, 22-24, 27, 28

## **FEDERAL STATUTES**

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 32, 34, 40

18 U.S.C. § 3553(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 32, 36, 40

v

18 U.S.C. § 3553(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

18 U.S.C. § 3742(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841(b)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

21 U.S.C. § 843(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 26

21 U.S.C. § 846. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

21 U.S.C. § 851(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **OTHER AUTHORITIES**

U.S.S.G. § 5K1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

vi

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff-appellee, the United States of America, believes that the facts and legal arguments are adequately presented in the briefs and record and that the decisional process would not be significantly aided by oral argument. Additionally, defendant-appellant Edmundo Ruiz, Jr., has waived oral argument. (Ruiz's Redacted Br., p. iii).  Thus, the government recommends that this case be decided on the briefs under Fed. R. App. P. 34(a)(2)(C).

1

## <u>JURISDICTIONAL STATEMENT</u>

The district court derived jurisdiction under 18 U.S.C. § 3231.  (R. 60: Superseding Indictment).  The district court entered final judgment against defendant-appellant, Edmundo Ruiz, Jr., on July 14, 2011.  (R. 487: Judgment).  Ruiz filed his timely notice of appeal on July 19, 2011.  (R. 488: Notice of Appeal).  This Court reviews the final disposition of a district court case under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

2

## <u>STATEMENT OF THE ISSUES</u>

I.      Whether a sufficient factual basis supports Ruiz's guilty pleas?

II.     Whether Ruiz waived his right to challenge his statutory mandatory minimum sentence to which he agreed under the amended plea agreement?

III.    Whether, without a substantial assistance motion under 18 U.S.C. § 3553(e) from the government, the district court lacked authority to *sua sponte* depart or vary below the mandatory minimum sentence to which Ruiz agreed under the amended plea agreement?

IV.     Whether Ruiz waived his arguments that, contrary to the parties' agreement, the district court should have applied a three-level reduction for acceptance of responsibility and declined to apply a four-level upward adjustment for role, both of which, even if resolved in Ruiz's favor, would not have altered his agreed upon statutory mandatory minimum sentence?

3

## STATEMENT OF THE CASE

On August 7, 2008, a federal grand jury, in the Northern District of Ohio, returned a superseding indictment charging Ruiz and others with participating in a drug conspiracy, in violation of 21 U.S.C. § 846 (Count 1).  (R. 60: Superseding Indictment).  Count 13 also charged Ruiz with unlawfully using a communication facility, in violation of 21 U.S.C. § 843(b).  (Id.).  On April 7, 2009, the government filed an information establishing Ruiz's prior felony drug conviction for sentencing enhancement purposes under 21 U.S.C. § 851(a)(1).  (R. 204: Information).

Ruiz pleaded guilty to both counts under a sealed plea agreement with the government on April 9, 2009.  (R. 206: Plea Agreement (Under Seal)).  The same day, Magistrate Judge Vernelis Armstrong recommended that the district court accept Ruiz's guilty pleas.  (R. 207: Report and Recommendation).  On May 19, 2009, United States District Judge James Carr adopted the magistrate judge's report and recommendation and accepted Ruiz's guilty pleas.  (R. 269: Order).

Over two years later, on July 13, 2011, Ruiz entered into an amended plea agreement.  (R. 485: Amended Plea Agreement).  During the same hearing, the district court sentenced Ruiz to the statutory mandatory minimum of 240 months imprisonment for Count 1 and 48 months imprisonment for Count 13, to run

4

concurrently, followed by ten years of supervised release for Count 1 and three years of supervised release for Count 13, also to run concurrently.  (R. 484: Minutes).  The court also ordered Ruiz to pay a $200 special assessment.  (Id.). The district court entered final judgment on June 14, 2011.  (R. 487: Judgment). Ruiz filed his notice of appeal on July 19, 2011.  (R. 488: Notice of Appeal).

On December 28, 2011, the government filed a sealed motion to dismiss Ruiz's appeal based on the appellate waiver provisions of the original and amended plea agreements.  On May 9, 2012, a motions panel referred the government's request to the merits panel for disposition.

5

## STATEMENT OF THE FACTS

Ruiz faced a statutory minimum sentence of 20 years imprisonment for his drug conspiracy offense and "an initial . . . sentencing guideline range of 292 to 365 months." (R. 228: 4/9/09 Plea Tr., p. 3). Ruiz pleaded guilty pursuant to a sealed plea agreement with the government. (R. 206: Plea Agreement (UNDER SEAL)).

As described during the change of plea hearing,[1] the cooperation provision of the parties' agreement "require[d] the defendant to respond truthfully and completely to all questions put to him." (R. 228: 4/9/09 Plea Tr., p. 18). This included an agreement to provide "truthful and accurate information." (Id., p. 27). "[N]othing in the agreement require[d] the government to accept any cooperation or assistance." (Id., p. 19). The agreement also provided "that any question as to the completeness, truthfulness, and candor of the defendant's disclosures shall be determined by the government attorneys within the exercise of their sole discretion and judgment." (Id., p. 28). If Ruiz "complie[d] with all of his obligations . . . [the government would] in the exercise of its sole discretion move at . . . sentenc[ing] for up to a four-level reduction for substantial assistance pursuant to

---

[1] The transcript of the change of plea hearing is not under seal.

6

5K1.1 of the advisory guidelines, and also move for a sentence below the 20-year statutory minimum." (Id., p. 25).

The original plea agreement also contemplated a three-level reduction for acceptance of responsibility (id., pp. 21, 26), and a four-level increase for Ruiz's role as a leader or organizer. (Id., p. 23). Ruiz agreed to waive his right to appeal his sentence except for "any punishment in excess of the statutory maximum or any sentence to the extent that it exceeds the maximum of the sentencing range determined under the advisory sentencing guidelines in accordance with the sentencing stipulations and computations in th[e] agreement, using the criminal history [category] . . . found by th[e] Court." (Id., p. 28).

After the prosecutor described the parties' agreement, the magistrate judge commented, "It's a pretty extensive cooperation agreement set forth in paragraph 2, and you've read that, you've discussed it fully with Mr. Hart [defense counsel], and you are satisfied with the terms of your cooperation." (Id., p. 31). When the court then asked if Ruiz understood "the importance of truthful statements and responses. Do you understand how critical that is?" Ruiz, replied: "Yes, Your Honor, I do." (Id.). When next asked if he understood "the extent of your cooperation that may be required," Ruiz replied, "Yes, Your Honor." (Id.).

7

When asked if he had "any concerns or questions about this plea agreement," Ruiz responded: "No, Your Honor." (Id. p. 33). Ruiz also confirmed that the prosecutor had summarized accurately the parties' agreement. (Id.).

The prosecutor then provided a lengthy factual basis for Ruiz's guilty pleas (id., pp. 35-42), including that Ruiz and numerous other defendants were involved in a conspiracy. (Id., p. 35). Specifically, the prosecutor stated that the "defendants knowingly and intentionally formed a conspiracy; they combined, they confederated, and they agreed together to distribute large quantities of several controlled substances, to include between 50 and 150 kilograms of cocaine, probably in excess of a thousand kilograms or more of marijuana, and approximately two kilograms of heroin." (Id., pp. 35-36). The prosecutor noted that Ruiz "receive[d] substantial quantities of these drugs from Raudell Rodriguez and others associated with him." (Id., p. 36). Specifically, Rodriguez obtained "large quantities of marijuana which were then shipped out to the defendant in the Toledo area through various couriers, . . . [who] acted at the behest of and at the specific request of this defendant [Ruiz] to transport those drugs into the Toledo area." (Id.). Ruiz also "had a separate source of cocaine out in California, and that individual and others associated with him were responsible for bringing in excess of 50 kilograms of cocaine into the area, which were then distributed

8

through the course of the conspiracy." (Id.).  The prosecutor then described several overt acts during the conspiracy.  (Id., pp. 37-41).

In short, "the government would have proven both that the defendant knew of the conspiracy, that he was a direct manager of the conspiracy . . . in . . . Toledo, and traveled to Arizona to establish drug connections there, also traveled to other areas." (Id., pp. 41-42).  The government further noted that "the defendant certainly voluntarily and knowingly joined the conspiracy and took direct part in its distribution activities, and was a manager as set forth in the plea agreement over a number of other persons here in the city of Toledo area."  (Id., p. 42).

The prosecutor also noted that the conversation charged as Count 13 reflected that "Ruiz asked a person known to the Grand Jury, 'Did you get them that plate of food?'  The other person responded 'Yeah.'  He said, 'Come out and check them out.'  Edmundo Ruiz said 'Okay. . . . we're ready, we're ready.'" (Id., pp. 40-41).  After describing the conversation, the prosecutor stated that "the government would have proven[,] through the testimony of the person known to the Grand Jury who was cooperating with the government[,] that th[e] conversation was related to the distribution of drugs." (Id., p. 41).  Additionally, the "conversation would have been proven to have facilitated the drug conspiracy charged in Count 1 of the indictment."  (Id.).

9

The court then ensured that Ruiz agreed with the factual basis presented by

the prosecutor:

> THE COURT: You heard the statements of Mr. Wilson, the rather
> prolonged statement.  Do you disagree with any portion of the
> statements that Mr. Wilson made?
>
> THE DEFENDANT:  No, Your Honor.
>
> THE COURT:  You have had an opportunity to confer with Mr. Hart,
> and you don't disagree with any of the statements?
>
> THE DEFENDANT:  No, Your Honor.

(Id., p. 42).  When asked if he "fully adopt[ed] as . . . [his] own statement the

statements made by Mr. Wilson," Ruiz replied: "Yes, Your Honor."  (Id.).

Ruiz then agreed that a drug distribution conspiracy existed, which he

voluntarily joined, and that he traveled in furtherance of the conspiracy:

> THE COURT:  And you agree then that a conspiracy existed, it was a
> conspiracy to distribute controlled substances, including cocaine, in
> amounts of more than 50 kilograms but less than 150, and other
> controlled substances, marijuana and heroin. You knew about the
> conspiracy, you voluntarily joined the conspiracy, and in fact, you
> were the direct manager of that drug distribution here in Toledo; and
> in fact, you traveled to other jurisdictions, specifically Arizona, in
> furtherance of the drug conspiracy.
>
> Do you agree that you did those things?
>
> THE DEFENDANT:  Yes, Your Honor.

10

THE COURT:  And please feel free to say no or correct me if it's a misstatement.

THE DEFENDANT:  No.  I agree, Your Honor.

(<u>Id.</u>, p. 43).  Ruiz also agreed that he engaged in the described overt acts (<u>id.</u>), and the "conversation alleged in Count 13 which related to the direct distribution of the controlled substances that were involved in th[e] conspiracy."  (<u>Id.</u>, p. 44).

After defense counsel said that "those facts would be sufficient for the plea entered here today," the court asked Ruiz if he "disagree[d] with any portion of his [counsel's] statement or do you want to add anything more to his statement."  (<u>Id.</u>, p. 45).  Ruiz replied: "No, Your Honor, I don't.  I do agree with it."  (<u>Id.</u>).

Additionally, defense counsel stated: "We are quite satisfied with the factual basis that has been presented and agreed to."  (<u>Id.</u>).  When given an opportunity to provide his own factual statement, defense counsel reiterated that "he's [Ruiz is] fully satisfied to adopt the statements."  (<u>Id.</u>).  Defense counsel further noted that Ruiz "has not contested that the facts described by Mr. Wilson would be sufficient for the Court to accept his plea."  (<u>Id.</u>).  Ruiz agreed with defense counsel's statement.  (<u>Id.</u>, p. 46).

11

When the court asked counsel if they were satisfied that the court had complied with Fed. R. Crim. P. 11's requirements, defense counsel said: "Yes, Your Honor." (Id., p. 47). Ruiz then pleaded guilty. (Id.).

"[B]ased upon the answers and statements given . . . in Court by Mr. Ruiz under oath and on the record in the presence of his counsel . . . [the magistrate judge found that] Ruiz [wa]s competent to plead" guilty. (Id., pp. 47-48). The court also found "that there is a factual basis for Mr. Ruiz's plea." (Id., p. 48). Consequently, the court "enter[ed] a finding and a recommendation for a plea of guilty." (Id.). Ruiz did not object to the magistrate judge's recommendation, which the district court accepted. (R. 269: Order).

Evidence that Ruiz Breached the Plea Agreement by Not Fully Cooperating

During a hearing over two years later, in which Ruiz sought to enforce the plea agreement (R. 501: 7/12/11 Evidentiary Hearing (Hrg.) Tr., p. 2), the government explained that Ruiz had "not rendered substantial assistance." (Id., p. 4). The prosecutor explained that the government had "conducted a good faith review. We have analyzed the situation, and we have, in fact, concluded that there has been a breach." (Id.). Specifically, the prosecutor stated that Ruiz had not "testif[ied] truthfully at trial" and "did not respond truthfully and completely to any and all questions that were put to him during the proffer sessions." (Id., p. 5).

12

In short, the government determined that Ruiz did not provide "truthful and accurate information, and that he withheld information from the government and also misled and gave material incomplete information during the proffer situations and during his trial testimony." (Id., pp. 5-6; see also id., p. 7).

In support, Special Agent Kyle Fulmer, FBI, testified that, during the first proffer with Ruiz on March 6, 2009 (R. 501: Fulmer, 7/12/11 Evidentiary Hrg. Tr., pp. 12-13), which lasted approximately four hours (id., p. 19), Fulmer asked Ruiz about Mondragon. During the interview, Fulmer wanted to know how Ruiz and Mondragon met and whether Mondragon "had supplied drugs to Mr. Ruiz or if he had provided money to them." (Id., p. 14). Fulmer explained that he sought the information for "use at a later time during trial." (Id., p. 15).

Ruiz told Fulmer that he knew Mondragon by his nickname, but had only seen him twice during the investigation: "once . . . when we [law enforcement] actually observed them on surveillance here in Toledo. And the only other time . . . in Columbus, Ohio[, when] . . . this case was indicted, . . . in late July of 2008." (Id., p. 16). Ruiz denied providing Mondragon "any amounts of money but [said] that Mr. Mondragon had come . . . to Toledo looking for money on behalf of Mr. Raudell Rodriguez-Gonzalez." (Id.). Fulmer noted the information in a proffer report. (Id., pp. 16-17).

13

Ruiz did not disclose his involvement with Mondragon in drug trafficking

or drug proceeds.  (Id., p. 17).  Nor did Ruiz disclose that he met Mondragon in

Arizona.  (Id.).  In sum, Ruiz told Fulmer and the prosecutor that "He [Ruiz] did

not know if he [Mondragon] had any connection to drug business at all."  (Id., p.

18).  Consequently, Fulmer believed that "Ruiz didn't know him [Mondragon]

very well, other than the fact that he [Mondragon once] came to town looking for

money on behalf of Raudell Rodriguez-Gonzalez."  (Id.).

Ruiz did not disclose anything about Mondragon during the second proffer.

(Id., p. 19).  During a third interview shortly before Mondragon's trial (id., p. 20),

Ruiz repeated "what he had stated prior to us, that he didn't know who this person

[Mondragon] was, and . . . he wasn't sure if it was just someone trying to come

and get some money out of him on behalf of Grandpa or Mr. Raudell

Rodriguez-Gonzales."  (Id., p. 21).  Ruiz again said that he had only seen

Mondragon "twice, once in Toledo where they spotted police surveillance and

then another time in Columbus where he had happened to meet with Mr.

Mondragon in Columbus."  (Id.).  Consistent with discovery previously provided,

Ruiz admitted renting a car for Mondragon in Columbus.  (Id., pp. 22-23).  Ruiz,

however, did not disclose that he and Mondragon were involved in drug

14

trafficking or that he had seen Mondragon more than the two instances described.
(Id., p. 23).

When testifying during Mondragon's June 2008 trial (id., p. 26), Ruiz

described the two instances when he saw Mondragon.  (Id., pp. 28-30).  When

asked "if he ever saw him [Mondragon] again, . . . he [Ruiz] said no, he did not

ever see him again, just in custody."  (Id., p. 30).  During testimony, Ruiz also

denied engaging in any drug deals with Mondragon.  (Id., p. 31).

Mondragon's information during proffers on June 10, 2009 and June 25,

2009, differed greatly from Ruiz's information, however.  (Id., p. 49).  Mondragon

described his discussions with Ruiz about a drug debt Ruiz owed to

Rodriguez-Gonzales, aka Grandpa, which Ruiz repaid before obtaining marijuana

from Mondragon.  (Id., pp. 42-44, 101-03).   Mondragon also "detailed much more

contact between them [Mondragon and Ruiz], and . . . indicated that they had met

for the first time in Phoenix, Arizona[,] prior to February of 2008, . . . when the

two of them met here in Toledo and actually spotted police surveillance."  (Id., pp.

39-40).  Mondragon said that, on several occasions, in Phoenix, Toledo and

Columbus, Ruiz gave him money in exchange for marijuana.  (Id., p. 40).  When

Ruiz went to Arizona, the two discussed Ruiz "having to get a location . . . near

the U.S./Mexican border.  And . . . [that] Mondragon actually arranged for Mr.

15

Ruiz to rent an apartment or a house in a Rio Rico area" (id., p. 41), for a drug

stash location (id., p. 45), which law enforcement subsequently verified "through

power records."  (Id., p. 41; see also id., pp. 44-46).  Investigators had not

previously known about the Rio Rico property.  (Id., pp. 46-47, 107).

Investigators also learned that Ruiz asked Mondragon to kill his former partner,

Martin Comargo.  (Id., pp. 41-42).

Consequently, after meeting with Mondragon, Fulmer determined that Ruiz

had been untruthful and had committed perjury.  (Id., pp. 48, 76).  Fulmer

explained that "Ruiz indicated he knew nothing about Mr. Mondragon being

involved in drug trafficking, where[as] Mr. Mondragon's explanation is that he

came to Mr. Ruiz collecting money for drugs that were provided by him to Raudell

Rodriguez-Gonzales, and they had actually met a number of times prior to that."

(Id., pp. 49-50).  Fulmer testified that Ruiz's failure to provide truthful information

about Mondragon "affected our future investigations" (id., p. 50), of those outside

the Toledo area.  (Id., p. 51).  Additionally, Fulmer said Ruiz could no longer be

used as a witness in future cases.  (Id., pp. 51, 114).  Fulmer also believed that, had

Ruiz provided truthful information about Mondragon, "it would have dramatically

changed the case against Mr. Mondragon," as the information would have

weighed heavily against Mondragon.  (Id., p. 52).

16

Amended Plea Agreement

The day after Fulmer's testimony, Ruiz agreed to an amended plea

agreement concerning sentencing consequences, including that the parties would

recommend that the district court impose the mandatory minimum sentence of 240

months imprisonment.  (R. 500: 7/13/11 Sentencing Tr., pp. 2-3, 7; R. 485:

Amended Plea Agreement, p. 3).  Unlike the original plea agreement, the amended

plea agreement did not contain a cooperation provision or contemplate an

acceptance of responsibility adjustment.  (R. 500: 7/13/11 Sentencing Tr., pp. 6-7,

9).  Consequently, under the amended agreement, the parties agreed that Ruiz had

a base offense level of 36 and a total offense level of 40, after the previously

agreed upon four-level increase for Ruiz's role as a leader or organizer.  (Id., p. 7).

Under the amended agreement, Ruiz again waived his right to appeal his

sentence except for "any punishment in excess of the statutory maximum and any

sentence to the extent it exceeds the maximum of the sentencing range determined

under the advisory Sentencing Guidelines, in accordance with the sentencing

stipulations and computations in this agreement, using the criminal history

category found applicable by the Court."  (Id., pp. 8-9; see also R. 485: Amended

Plea Agreement, p. 6).  Ruiz "still reserve[d] any right he would have on appeal

collaterally to attack and to bring claims of ineffective assistance of counsel or

prosecutorial misconduct," however.  (R. 500: 7/13/11 Sentencing Tr., p. 9; <u>see</u> <u>also</u> R. 485: Amended Plea Agreement, p. 6).

During the hearing about the amended agreement, Ruiz confirmed his understanding of the appellate waiver provision.  (R. 500: 7/13/11 Sentencing Tr., p. 15).  When discussing the role adjustment and absence of an acceptance of responsibility reduction, Ruiz expressed concern, contending that he "was not the main supplier."  (<u>Id.</u>, p. 16).  Defense counsel then explained, that while Ruiz did not dispute the role adjustment, given Sixth Circuit case law, Ruiz, nevertheless, believed that the adjustment overstated his conduct since others held higher positions in the conspiracy.  (<u>Id.</u>, pp. 16-18).  The prosecutor responded that Ruiz previously agreed to the same role adjustment under the original plea agreement, which the prosecutor noted "remains in full force and effect."  (<u>Id.</u>, p. 18).  The prosecutor also noted that Ruiz agreed to the factual basis supporting the role adjustment and "the Magistrate found a factual basis in support of the counts and the leader of the incident."  (<u>Id.</u>, p. 19).  When the district court asked whether Ruiz understood that the term "leader" under the Guidelines "has a somewhat different meaning than the ordinary meaning that you and I have applied to it," Ruiz replied, "Yes," and said: "I understand."  (<u>Id.</u>, p. 20).  In short, while Ruiz disagreed with the label "leader or organizer," based on the terms' ordinary

18

meaning, Ruiz agreed with the district court's explanation that the Guidelines

designation was correct.  (<u>Id.</u> (referencing <u>id.</u>, pp. 16-18)).  Ruiz also confirmed

his understanding, that even if the court resolved the adjustments in his favor,

Ruiz's sentence would be no different (given the applicable mandatory minimum

sentence).  (<u>Id.</u>, pp. 20-21).

After Ruiz entered into the amended plea agreement, the court noted that,

although it could not have decided the motion hearing concerning the

government's decision declining to recommend a substantial assistance reduction

without hearing all the evidence, the court commented: "I will be very candid with

you, I don't think things were going very well for you."  (<u>Id.</u>, p. 23).  The court

explained that: "Agent Fulmer testified I thought plausibly and persuasively."

(<u>Id.</u>).  Consequently, the court stated that Ruiz "made a very sensible choice" by

entering into the amended plea agreement.  (<u>Id.</u>, p. 24).

When discussing the parties' sentencing recommendation for the statutory

mandatory minimum of 240 months imprisonment, the court stated that "the

outcome is, all things considered, fair and appropriate."  (<u>Id.</u>).  After imposing the

recommended sentence (<u>id.</u>, pp. 27-28), the court explained that it had considered

the sentencing factors under 18 U.S.C. § 3553(a).  (<u>Id.</u>, p. 32).  In particular, the

court noted that: "This was obviously a very serious offense.  The defendant was

19

actively engaged in the perpetration of the various activities that led to his conviction." (Id.).  As such, the court "believe[d] the sentence w[ould] promote respect for the law," was "just," provided an "adequate" "deterrent effect" and "adequately protect[ed] the public." (Id.).  Additionally, the court explained "that the [downward] variance which the parties have recommended to a sentence not exceeding the statutory minimum mandatory level is entirely appropriate[, as] [a] sentence more severe than that would not reflect what the defendant did, as serious as it was." (Id.).

20

## <u>SUMMARY OF THE ARGUMENT</u>

A more than adequate factual basis supports Ruiz's guilty pleas to drug conspiracy and unlawfully using a communications facility.  The extensive factual basis to which Ruiz repeatedly agreed and adopted tracked the elements of the offenses.  In fact, the defense agreed during the plea hearing that the magistrate judge had complied with the requirements under Fed. R. Crim. P. 11.  Even if *arguendo* the factual basis were insufficient, given the 20-year mandatory minimum sentence that otherwise applied without a cooperation agreement, Ruiz cannot show that, but for the alleged factual deficiency, he would not have pleaded guilty.

Ruiz waived his right to challenge his sentence under the terms of his original and amended plea agreements.  Regardless, Ruiz cannot show that the district court erred by failing to *sua sponte* depart or vary from the agreed upon statutory mandatory minimum sentence based on his alleged substantial assistance.  Under <u>United States v. Massey</u>, 663 F.3d 852, 860 (6th Cir. 2011), <u>petition for cert. filed</u> (May 1, 2012, Case No. 11-10322), the court lacked authority to impose a sentence below the mandatory minimum absent a substantial assistance motion from the government – which the government declined to file after Ruiz provided false information and perjured testimony.

21

Additionally, Ruiz abandoned his claims about adjustments for acceptance of responsibility and aggravating role.  Even if the district court had resolved those issues in his favor, however, Ruiz still would have received the agreed upon statutory mandatory minimum sentence.  Ruiz's arguments about his guilty pleas and sentence, therefore, are without merit.

22

# ARGUMENT

## I.    AN EXTENSIVE FACTUAL BASIS SUPPORTS RUIZ'S GUILTY PLEAS.

### A.    Standard of Review

This Court reviews for plain error a claim that the district court violated Fed. R. Crim. P. 11 by accepting the defendant's guilty plea without a sufficient factual basis, where the defendant failed to object at the plea hearing.  United States v. Taylor, 627 F.3d 1012, 1017 (6th Cir. 2010).

### B.    Argument

Ruiz's claim that the district court erred by accepting his guilty plea without a sufficient factual basis for the offenses is wholly without merit.  Under Fed. R. Crim. P. 11(b)(3), "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."  "Therefore, some rehearsal of the elements of the offense is necessary for any defendant, and the failure to identify the elements of the offense is error and cannot be said to be harmless." United States v. McCreary-Redd, 475 F.3d 718, 723 (6th Cir. 2007) (internal citations and alterations omitted).

While "[t]he ideal means to establish the factual basis for a guilty plea is for the district court to ask the defendant to state, in the defendant's own words, what

23

the defendant did that he believes constitutes the crime to which he is pleading guilty," it is "by no means the only method." Id. at 722. A "'district court [also] may determine the existence of the Rule 11(f) factual basis from a number of sources including a statement on the record from the government prosecutors as well as a statement from the defendant.'" Id. (quoting United States v. Tunning, 69 F.3d 107, 112 (6th Cir. 1995)).

As Ruiz admits in his brief, he "agree[d] that a conspiracy existed to distribute controlled substances and that he knowingly joined that conspiracy as a drug manager of drug distribution." (Ruiz's Redacted Br., p. 19). Despite his acknowledgment about previously agreeing that the conspiracy existed, Ruiz, nevertheless, inexplicably argues for the first time on appeal that there were insufficient facts presented establishing the existence of a conspiracy rather than a buyer-seller relationship. (Id., p. 20). The record belies his claim.

Beyond agreeing to and adopting the factual basis provided by the government (R. 228: 4/9/09 Plea Tr., pp. 35-46), during the plea hearing, defense counsel stated: "We are quite satisfied with the factual basis that has been presented and agreed to." (Id., p. 45). Defense counsel also significantly noted that Ruiz "has not contested that the facts described by Mr. Wilson *would be sufficient for the Court to accept his plea*." (Id. (emphasis added)). Ruiz agreed

24

with this statement.  (Id., p. 46).  Further, when asked if counsel was satisfied that the court had complied with Fed. R. Crim. P. 11's requirements, defense counsel said: "Yes, Your Honor."  (Id., p. 47).

Ruiz also did not object to the magistrate judge's conclusion that a sufficient factual basis existed to support his pleas.  (R. 207: Report and Recommendation, p. 2; R. 269: Order).  Indeed, given Ruiz's agreement below about the sufficient factual basis provided, Ruiz cannot credibly claim now that it is insufficient.  Regardless, the record independently reflects a sufficient factual basis.

The government began its factual recitation, *to which Ruiz agreed repeatedly*, by noting that Ruiz and numerous others were involved in a conspiracy.  (R. 228: 4/9/09 Plea Tr., p. 35).  Specifically, the prosecutor stated that the "*defendants knowingly and intentionally formed a conspiracy;* they combined, they confederated, and they agreed together to distribute large quantities of several controlled substances, to include between 50 and 150 kilograms of cocaine, probably in excess of a thousand kilograms or more of marijuana, and approximately two kilograms of heroin."  (Id., pp. 35-36 (emphasis added)).  The prosecutor described that, as part of the conspiracy, Rodriguez obtained "large quantities of marijuana which were then shipped out to the

25

defendant in the Toledo area through various couriers, . . . [who] acted at the behest of and at the specific request of this defendant [Ruiz] to transport those drugs into the Toledo area." (Id.).  The prosecutor also described Ruiz's cocaine distribution and detailed several overt acts during the conspiracy.  (Id., pp. 37-41).

Additionally, the prosecutor stated that "the government would have proven both that the *defendant knew of the conspiracy*, that he was a direct manager of the conspiracy . . . in . . . Toledo, and traveled to Arizona to establish drug connections there, also traveled to other areas." (Id., pp. 41-42 (emphasis added)). The prosecutor also stated that the evidence would have shown that "*the defendant certainly voluntarily and knowingly joined the conspiracy and took direct part in its distribution activities*, and was a manager as set forth in the plea agreement over a number of other persons here in the city of Toledo area." (Id., p. 42 (emphasis added)).  The last factual statement alone, to which Ruiz undisputably agreed, easily satisfied the elements of a drug conspiracy, namely, that there was: "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." United States v. Welch, 97 F.3d 142, 148-49 (6th Cir. 1996).  Because the factual basis tracked the elements of a drug conspiracy offense, Ruiz's argument about an insufficient factual basis is wholly without merit.

26

Indeed, when the magistrate judge asked Ruiz if he agreed that "a conspiracy existed . . . to distribute controlled substances . . . . You knew about the conspiracy, you voluntarily joined the conspiracy,  . . .  you were the direct manager of that drug distribution here in Toledo; and . . . , you traveled to other jurisdictions, specifically Arizona, in furtherance of the drug conspiracy," Ruiz replied: "Yes, Your Honor."  (R. 228: 4/9/09 Plea Tr., p. 43).  Given his agreement that he voluntarily joined the drug conspiracy and committed acts in furtherance of the conspiracy, Ruiz cannot show that the factual basis for his drug conspiracy conviction is deficient.

Likewise, the prosecutor's description of Ruiz's telephone conversation, which "the government would have proven . . . was related to the distribution of drugs" and "facilitated the drug conspiracy charged in Count 1 of the indictment" (id., p. 41), to which Ruiz also agreed, easily satisfies the elements of a "'facilitating' conviction pursuant to § 843(b) . . . , [namely]: (1) a knowing or intentional (2) use of a communication facility . . . (3) to facilitate the commission of a drug offense."  United States v. McGhee, 854 F.2d 905, 908 (6th Cir. 1988). Indeed, Ruiz specifically agreed that the "conversation alleged in Count 13 . . . related to the direct distribution of the controlled substances that were involved in th[e] conspiracy."  (R. 228: 4/9/09 Plea Tr., p. 44).

27

Even if this Court disagrees, however, Ruiz cannot show a reasonable probability that, but for the alleged Rule 11 error, he would not have pleaded guilty *at that time* and would have gone to trial instead.  Without a substantial assistance motion from the government, which depended upon Ruiz providing truthful and accurate information (R. 228: 4/9/09 Plea Tr., pp. 18, 27-28; see also R. 206: Plea Agreement, pp. 2, 7-9 (UNDER SEAL)), Ruiz faced an enhanced 20-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A).  (R. 228: 4/9/09 Plea Tr., pp. 25-26; R. 206: Plea Agreement, pp. 7-8 (UNDER SEAL); R. 204: Information).  Under the parties' plea agreement, however, Ruiz had the opportunity to receive a sentence below the mandatory minimum, assuming he received anticipated substantial assistance and acceptance of responsibility reductions.  (R. 228: 4/9/09 Plea Tr., pp. 25-26).  A rational defendant with no other means to avoid a mandatory 240-month sentence would have pleaded guilty under a cooperation agreement.  Thus, on the facts, even assuming *arguendo* an error occurred under Rule 11(b)(3), Ruiz cannot satisfy the heightened showing of prejudice required for reversal under United States v. Dominguez-Benitez, 542 U.S. 74, 83 (2004) ("[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule

28

11, must show a reasonable probability that, but for the error, he would not have

entered the plea.")

29

## II.    RUIZ WAIVED HIS RIGHT TO CHALLENGE HIS STATUTORY MANDATORY MINIMUM SENTENCE TO WHICH HE AGREED UNDER THE AMENDED PLEA AGREEMENT.

### A.    Standard of Review

"This Court reviews the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement *de novo*."  United States v. Swanberg, 370 F.3d 622, 626 (6th Cir. 2004) (quoting United States v. Smith, 344 F.3d 479, 483 (6th Cir. 2003)).

### B.    Argument

As noted in the Statement of Facts, the government previously filed a sealed motion to dismiss Ruiz's appeal based on the appellate waiver provisions of the original and amended plea agreements.  The government incorporates those arguments herein.

Moreover, while Ruiz disagreed with the label "leader or organizer" when discussing the amended plea agreement during the hearing, the prosecutor noted that "those facts were placed on the record and the defendant agreed to them, and the Magistrate found a factual basis in support of the counts and the leader of the incident."  (R. 500: 7/13/11 Sentencing Tr., p. 19).  Ruiz also agreed with the district court's explanation that the Guidelines designation is correct even though

30

it is "somewhat different meaning than the ordinary meaning that you and I have applied to it." (Id., p. 20).

Aside from Ruiz waiving the issue by abandoning his claim at sentencing, which the government will discuss in the last argument, Ruiz did not preserve the issue under the appellate waiver provisions of his plea agreements. (R. 485: Amended Plea Agreement, pp. 5-6; R. 228: 4/9/09 Plea Tr., p. 28). Even in cases where the defendant reserves the right to contest an issue at sentencing under a plea agreement, which Ruiz did not do, the defendant must also reserve the right to appeal the district court's determination about the issue under the appellate waiver provision. United States v. Calderon, 388 F.3d 197, 199-200 (6th Cir. 2004); accord United States v. Burgess, 142 Fed. Appx. 232, 238, 2005 WL 1515327, *5 (6th Cir. 2005) (unpublished). Indeed, this Court found, in rejecting a defendant's argument that a "stipulation allowing him to request a downward departure constitute[d] a separate 'supplemental agreement' to the appellate waiver provision of his plea agreement, that "[t]he right to raise an issue before the district court has value, it seems to us, even if it is not accompanied by a right to appeal." Calderon, 388 F.3d at 200. Thus, a defendant cannot circumvent an appellate waiver provision of his plea agreement by relying on the fact that the

31

parties left a downward departure or variance open for determination by the

district court at sentencing, which did not occur here.

In sum, this Court has made clear that "[c]riminal defendants may waive

their right to appeal as part of a plea agreement so long as the waiver is made

knowingly and voluntarily." Swanberg, 370 F.3d at 625 (citing United States v.

Fleming, 239 F.3d 761, 763-64 (6th Cir. 2001)). It is "well settled that a defendant

in a criminal case may waive any right, even a constitutional right, by means of a

plea agreement." United States v. McGilvery, 403 F.3d 361, 362 (6th Cir. 2005)

(internal punctuation and citation omitted). Plea agreements may also "waive

constitutional or statutory rights then in existence, as well as those that courts may

recognize in the future." United States v. Wilson, 438 F.3d 672, 673 (6th Cir.

2006) (citing United States v. Bradley, 400 F.3d 459, 463 (6th Cir. 2005)). Thus,

Ruiz's claim that plain error review applies to his claims about the Guidelines

calculations and the statutory minimum sentence to which he not only agreed, but

did not preserve for appeal (R. 485: Amended Plea Agreement, pp. 3, 5-6), is

mistaken, as he waived his arguments under the plea agreements.

32

**III.    WITHOUT A SUBSTANTIAL ASSISTANCE MOTION UNDER 18 U.S.C. § 3553(e) FROM THE GOVERNMENT, THE DISTRICT COURT LACKED AUTHORITY TO *SUA SPONTE* DEPART OR VARY BELOW THE MANDATORY MINIMUM SENTENCE TO WHICH RUIZ AGREED UNDER THE AMENDED PLEA AGREEMENT.**

**A.    Standard of Review**

This Court reviews the ultimate reasonableness of a criminal sentence under a deferential abuse of discretion standard, which has both a procedural and a substantive component.  Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Jeross, 521 F.3d 562, 569 (6th Cir. 2008).  A district court abuses its sentencing discretion if it "commit[s] [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence– including an explanation for any deviation from the Guidelines range."  Gall, 552 U.S. at 51.

If this Court determines that the district court's sentencing decision is procedurally sound, this Court then "consider[s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard[,] . . . . tak[ing] into account the totality of the circumstances, including the extent of any variance from

33

the Guidelines range." Id.; Jeross, 521 F.3d at 569. "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." United States v. Conatser, 514 F.3d 508, 520 (6th Cir. 2008).

"A district court does not commit reversible error simply by 'attach[ing] great weight' to a single factor." United States v. Thomas, 2011 WL 4014345, *2 (6th Cir. 2011) (unpublished) (quoting Gall, 552 U.S. at 57). Further, this Court has recognized that, "where a district court explicitly or implicitly considers and weighs all pertinent factors, a defendant clearly bears a much greater burden in arguing that the court has given an unreasonable amount of weight to any particular one." Thomas, 2011 WL 4014345 at *2 (internal quotation marks and citation omitted). This Court also has recognized that how a district court chooses to balance the applicable sentencing factors is beyond the scope of this Court's review. United States v. Sexton, 512 F.3d 326, 332 (6th Cir. 2008).

"A sentence that falls within a properly calculated guideline range is afforded a rebuttable presumption of reasonableness, and it is incumbent upon the defendant to demonstrate that his sentence is unreasonable." United States v. Brogdon, 503 F.3d 555, 559 (6th Cir. 2007). This Court has explained, "[i]n

34

general, [this Court] . . . must give 'due deference' to the district court's

conclusion that the sentence imposed is warranted by the § 3553(a) factors."

United States v. Bolds, 511 F.3d 568, 581 (6th Cir. 2007).  This Court also has

stated that "appellate courts must respect the role of district courts and stop

substituting their judgment for that of those courts on the front line."  United

States v. Phinazee, 515 F.3d 511, 521 (6th Cir. 2008).  Hence, "[t]he fact that . . .

[this Court] might have reasonably concluded that a different sentence was

appropriate is insufficient to justify reversal of the district court."  Bolds, 511 F.3d

at 581; accord United States v. Vowell, 516 F.3d 503, 511 (6th Cir. 2008).

## B.    Argument

Ruiz argues that the district court erred by declining to *sua sponte* depart or

vary below the statutory mandatory minimum sentence, to which he agreed under

the amended plea agreement (R. 485: Amended Plea Agreement, p. 3), without a

substantial assistance motion from the government.  In support, Ruiz contends that

the government incorrectly assessed his cooperation.

As the prosecutor noted during the plea hearing, the plea agreement's

cooperation provision "require[d] the defendant to respond truthfully and

completely to all questions put to him."  (R. 228: 4/9/09 Plea Tr., p. 18).

Specifically, the defendant agreed "to give complete truthful and accurate

information." (Id., p. 27).  Further, "any question as to the completeness,

truthfulness, and candor of the defendant's disclosures shall be determined by the

government attorneys within the exercise of their sole discretion and judgment."

(Id., p. 28).

Fulmer testified that, when asked about Mondragon, Ruiz said he knew

Mondragon by his nickname, but claimed to have only seen him twice before.  (R.

501, Fulmer, 7/12/11 Evidentiary Hrg. Tr., pp. 16-17, 21).  After Fulmer talked to

Mondragon, however, Fulmer determined that Ruiz had been untruthful about his

dealings with Mondragon and had committed perjury during Mondragon's trial.

(Id., pp. 48-52, 76).  For instance, Ruiz did not disclose that Mondragon arranged

for him "to rent an apartment or a house in a Rio Rico area" (Id., p. 41), for a drug

stash location (id., p. 45), which investigators subsequently verified "through

power records."  (Id., p. 41; see also id., pp. 44-47, 107).  Ruiz's failure to disclose

the apartment rental arrangement alone supported the government's decision

declining to move for a substantial assistance reduction, as it demonstrated that

Ruiz had not fully cooperated.

Further, by entering into the amended plea agreement when the hearing on

Ruiz's motion to enforce the plea agreement reconvened the morning after

Fulmer's testimony, Ruiz wholly abandoned his claim that the government

36

incorrectly evaluated his cooperation.  As the district court commented in

subsequently agreeing with Ruiz's decision to enter into the amended plea

agreement (R. 500: 7/13/11 Sentencing Tr., p. 24): "I don't think things were

going very well for you."  (Id., p. 23).  "Agent Fulmer testified I thought plausibly

and persuasively."  (Id.).

Even if *arguendo* Ruiz had not abandoned seeking a substantial assistance

reduction, which he did not request during sentencing, a district court may not

depart or vary below a statutory mandatory minimum sentence based on a

defendant's substantial assistance without a motion under 18 U.S.C. § 3553(e)

from the government.  United States v. Massey, 663 F.3d 852, 860 (6th Cir. 2011),

petition for cert. filed (May 1, 2012, Case No. 11-10322).  Thus, Ruiz cannot show

that the district court erred by imposing the statutory mandatory minimum

sentence that Ruiz agreed applied.  (R. 485: Amended Plea Agreement, p. 3).

37

**IV. RUIZ WAIVED HIS ARGUMENTS THAT, CONTRARY TO THE PARTIES' AGREEMENT, THE DISTRICT COURT SHOULD HAVE APPLIED A THREE-LEVEL REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY AND DECLINED TO APPLY A FOUR-LEVEL UPWARD ADJUSTMENT FOR ROLE, BOTH OF WHICH, EVEN IF RESOLVED IN RUIZ'S FAVOR, WOULD NOT HAVE ALTERED HIS AGREED UPON STATUTORY MANDATORY MINIMUM SENTENCE.**

**A.    Standard of Review**

This Court distinguishes between "waived" and "forfeited" issues, and it treats them differently.  "Forfeiture is the failure to timely assert a right, whereas waiver is the intentional relinquishment or abandonment of a known right." United States v. Sheppard, 149 F.3d 458, 461 n.3 (6th Cir. 1998).  This Court, in its discretion, may invoke plain error review on forfeited issues; however, it has no jurisdiction to review issues that the defendant has waived, as in the instant case concerning the absence of a three-level reduction for acceptance of responsibility and the district court's application of an agreed upon four-level upward adjustment for role.  Id.; United States v. Denkins, 367 F.3d 537, 544 (6th Cir. 2004); (see also R. 485: Amended Plea agreement, pp. 3-4).

**B.    ARGUMENT**

Ruiz argues that the district court erred by not applying a three-level adjustment for acceptance of responsibility (which the parties specifically agreed

38

did not apply (R. 485: Amended Plea Agreement, p. 3)), and by applying a four-

level upward adjustment for role (which the parties twice agreed applied (id., p. 4;

R. 228: 4/9/09 Plea Tr., p. 23)).  This Court has explained that a defendant's

intentional relinquishment or abandonment of a known right waives the issue and

forecloses any right to contest it on appeal.  See, e.g., Sheppard, 149 F.3d at 461 &

n.3 ("defendant did not forfeit his suppression argument; he waived the argument

by withdrawing his motion to suppress prior to trial"); accord Denkins, 367 F.3d at

544.  Indeed, a defendant waives his appellate rights when he initially presents an

issue to the district court, but subsequently withdraws the issue from the court's

consideration or otherwise abandons it.  Denkins, 367 F.3d at 542-44; Sheppard,

149 F.3d at 461.  When such an abandonment occurs, this Court is "categorically

without jurisdiction" to consider the matter as a basis for appeal.  Sheppard, 149

F.3d at 461.

Ruiz "intentionally relinquished" any claim about the district court's

Guidelines calculations, which were consistent with the parties's agreements.

Although Ruiz agreed under the amended plea agreement that an adjustment for

acceptance of responsibility did not apply and twice agreed that a four-level

upward adjustment for role applied (R. 485: Amended Plea Agreement, pp. 3-4; R.

228: 4/9/09 Plea Tr., p. 23), given his agreement that he "knowingly joined th[e]

39

conspiracy as a direct manager of drug distribution in Toledo" (Ruiz's Redacted

Br., p. 19 (referencing R. 228: 4/9/09 Plea Tr., pp. 41-43)), Ruiz expressed

concern about the adjustments during the amended plea agreement hearing.  (R.

500: 7/13/11 Sentencing Tr., p. 16).  Ruiz, however, never specifically requested

an acceptance adjustment at sentencing.  (Id.).  Further, while Ruiz personally

defined the terms "organizer" and "leader" differently than the Guidelines, Ruiz

ultimately agreed that an upward role adjustment applied.  (Id., pp. 16-20).  Ruiz,

therefore, intentionally and expressly abandoned any claim about adjustments for

acceptance of responsibility and role.  See United States v. Aparco-Centeno, 280

F.3d 1084, 1088 (6th Cir. 2002) (defendant waived argument that prior

convictions did not constitute "aggravated felonies" when he stated in his

sentencing memorandum that the convictions were aggravated felonies); see also

Denkins, 367 F.3d at 542-44.  Because Ruiz previously conceded the very issue he

now contests, he has waived, as opposed to forfeited, that issue.  Thus, "that

challenge is forever foreclosed, and cannot be resurrected on this appeal."

Denkins, 367 F.3d at 544.  Accordingly, this Court is without jurisdiction to

review his claim.

Regardless, even if Ruiz did not waive the argument and the facts did not

satisfy the Guidelines' definition of a leader or organizer, Ruiz still would have

40

received a 20-year statutory mandatory minimum sentence, which he agreed

applied under the amended plea agreement.  (R. 485: Amended Plea Agreement, p.

3).  The same also is true if the district court had granted a three-level reduction

for acceptance of responsibility.  As this Court has explained, "A court may not

depart below the statutory minimum unless the government moves for a departure

under either 18 U.S.C. §§ 3553(e) or 3553(f)."  Massey,  663 F.3d at 860 (citations

and footnote omitted).  "This court has further concluded that a district court lacks

any discretion under § 3553(a) to impose a sentence below the statutory

minimum."  Id.  Because the government did not move for a departure under

Sections 3553(e) or (f), Ruiz's claims about the adjustments, even if successful,

would not alter his mandatory minimum sentence.

41

# CONCLUSION

For the foregoing reasons, the United States respectfully requests that this

Court affirm Ruiz's convictions and mandatory minimum sentence.

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney


By:     /s/  **Laura McMullen Ford**
Laura McMullen Ford
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio  44113
Telephone No: (216) 622-3817
Facsimile No: (216) 522-7358
Laura.Ford@usdoj.gov
Counsel for Plaintiff-Appellee

42

## **CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION**

I hereby certify that the foregoing contains 7,763 words according to the word counting feature of WordPerfect X4 and complies with this Court's 14,000 word limitation for briefs.

/s/ **Laura McMullen Ford**
Laura McMullen Ford
Assistant U.S. Attorney

43

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of June 2012, a copy of the foregoing Brief of Plaintiff-Appellee, was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


**/s/  Laura McMullen Ford**
Laura McMullen Ford
Assistant United States  Attorney

44

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 30(b), the following filings from the district court's records are designated as relevant to this appeal:

| RECORD ENTRY NO. | DESCRIPTION OF ENTRY |
| --- | --- |
| N/A | Docket Sheet, Northern District of Ohio, Case No. 3:08CR304 |
| 60 | Superseding Indictment |
| 204 | Information to Establish Prior Conviction |
| 206 | Plea Agreement (UNDER SEAL) |
| 207 | Report and Recommendation |
| 228 | Transcript of Plea Hearing Held on 4/9/09 |
| 269 | Order Adopting Report and Recommendation |
| 484 | Minutes |
| 485 | Amended Plea Agreement |
| 487 | Judgment |
| 488 | Notice of Appeal |
| 500 | Transcript of Sentencing Hearing Held on 7/13/11 |
| 501 | Transcript of Evidentiary Hearing Held on 7/12/11 |
| N/A | Presentence Report |